46 F.3d 1133
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Earnest Frank CLARK, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 93-3530.
 United States Court of Appeals, Seventh Circuit.
 Submitted: Dec. 20, 1994.*
Decided: Dec. 21, 1994.
Rehearing and Suggestion for Rehearing In Banc
Denied March 8, 1995.
 
 Before FAIRCHILD, FLAUM and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Earnest F. Clark appeals the district court's denial of his motion to vacate, set aside, or correct his sentence. In his motion, filed pursuant to 28 U.S.C. Sec. 2255, Clark alleged both that he was denied effective assistance of counsel when his attorney failed to contest the constitutionality of his warrantless arrest, the warrantless search of his person, and the warrantless search of the apartment in which Clark was found and that his conviction is constitutionally infirm because of the admission of evidence gained pursuant to the warrantless searches and arrest. We disagree and affirm the judgment of the district court.
 
 BACKGROUND
 
 2
 In November 1991, the Tri-City National Bank in Milwaukee, Wisconsin was robbed by a man described by witnesses as wearing a baseball cap, sweater, baggy pants, black and white high-top athletic shoes, and a bandanna over his nose and mouth. The robber entered the bank, jumped onto a teller's counter, and pointed what was described as a silver plated gun at one of the tellers. In approximately two minutes, the robber collected over $11,000 and left the bank.
 
 
 3
 At the same time, a man drove a black Cadillac slowly down the alley outside of the bank. A postal carrier on his lunch break noticed the car moving down the alley and when he heard a commotion, saw a man who he thought looked "like a football player holding his arms over his stomach" run after the car. The car then pulled away with two people. The postal carrier became suspicious and wrote down the license plate number of the car which he gave the police when they arrived at the bank. Information about the black Cadillac was broadcast to local police. Within fifteen minutes of the broadcast an unoccupied car fitting the description was spotted parked a few blocks from the bank. The police spoke with a man who had been working in the area near the car and were told that a man wearing a long black coat had parked the car and entered the nearby apartment building.
 
 
 4
 The apartment building was sealed off and searched. When the police came to Gloria Clark's apartment, Ms. Clark claimed she was alone and granted the police permission to go through her apartment in order to search the apartment next door. After the police had entered her apartment, Eric Griffin appeared and was arrested. The police then asked Ms. Clark if they could search her apartment, in particular her closets. Ms. Clark responded by showing the officers the location of her closets. Clark was found hiding in a bedroom closet, arrested, and searched. The police found $3,870 in the pocket of Clark's pants and a .32 automatic chrome plated loaded handgun was recovered from the closet where he was hiding. The police also recovered from the apartment over $7,000 in cash, including marked "bait" money from the bank, and a long black coat with the keys to the black Cadillac in a pocket. After the arrests, the police took Clark and Griffin to the bank where they were viewed by six bank employees. Three of the bank employees positively identified Clark as the bank robber, three tentatively identified Clark, and no one identified Griffin.
 
 
 5
 Both Clark and Griffin were convicted by a jury of armed bank robbery in violation of 18 U.S.C. Secs. 2113(a), (d), & Sec. 2, and carrying a firearm during a crime of violence in violation of 18 U.S.C. Sec. 924(e). Clark was also convicted of possessing a firearm as a convicted felon in violation of 18 U.S.C. Sec. 922(g)(1). On direct appeal, Clark argued that the trial court erred in not suppressing the identification testimony of the bank employees. Clark's conviction was affirmed by this court. United States v. Clark, 989 F.2d 1490, 1494-1497 (7th Cir. 1993) (court assuming, without deciding, that the show up was unduly suggestive, yet finding that under the totality of circumstances the identifications were reliable). Clark then filed a Sec.2255 motion alleging ineffective assistance of counsel for failure to raise additional Fourth Amendment claims. The district court denied the motion and Clark now appeals.
 
 ANALYSIS
 
 6
 Clark contends that his counsel was ineffective because counsel failed to argue the following issues: (1) the police lacked probable cause to arrest Clark; (2) the police lacked probable cause to search Gloria Clark's apartment and/or the police search exceeded the scope of Ms. Clark's consent; and (3) the search of Clark subsequent to his arrest was illegal. This appeal represents the first time that Clark has claimed that he was denied effective assistance of counsel and that his conviction was obtained by use of evidence gained pursuant to an unconstitutional search and/or unlawful arrest.
 
 
 7
 A constitutional attack that was not raised on direct appeal may be raised in a Sec. 2255 petition only if the defendant can demonstrate both cause for the procedural default and actual prejudice from the failure to appeal.[1] United States v. Frady, 456 U.S. 152, 167-168 (1982); Barker v. United States, 7 F.3d 629, 632 (7th Cir. 1993), cert. denied, 114 S. Ct. 939 (1994). Ineffective assistance of counsel can constitute sufficient cause for failure to raise an issue. Coleman v. Thompson, 111 S. Ct. 2546, 2568 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986); Belford v. United States, 975 F.2d 310, 313-314 (7th Cir. 1992).
 
 
 8
 To establish his ineffective assistance of counsel claim, Clark must show that his trial counsel's representation (1) fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 688-689 (1984); United States v. Levine, 5 F.3d 1100, 1108 (7th Cir. 1993), cert. denied, 114 S. Ct. 1224 (1994). It is often more expedient for the court to address the issue of prejudice first. Strickland, 466 U.S. at 697; Degaglia v. United States, 7 F.3d 609, 612 (7th Cir. 1993). In order to show prejudice, a petitioner must establish that the alleged error by counsel rendered the result of the trial unreliable or the proceeding fundamentally unfair. Lockhart v. Fretwell, 113 S. Ct. 838, 841 (1993); Barker, 7 F.3d at 633. Clark has failed to establish that his trial counsel's performance was deficient or that any mistakes by his trial counsel deprived him of a fair trial.[2]
 
 
 9
 Clark's first claim is that his counsel was ineffective in failing to argue that his warrantless arrest violated the Fourth Amendment. Clark argues that each investigatory step that the police took, such as issuing a bulletin for the black Cadillac or searching the apartment building, required an independent showing of probable cause. This argument is misplaced. True, a warrantless arrest is valid under the Fourth Amendment only if supported by probable cause. Beck v. Ohio, 379 U.S. 89, 90 (1964). An analysis of probable cause, however, does not involve looking at isolated snap shots of a police investigation but rather looking at whether under "the totality of circumstances it was reasonable for the officer to believe that a particular individual had committed a crime." United States v. Robinson, 30 F.3d 774, 785 (7th Cir. 1994). See also Beck, 379 U.S. at 91; United States v. Foxworth, 8 F.3d 540, 543 (7th Cir. 1993), cert. denied, 114 S. Ct. 1414 (1994). Based upon our review of the record, we agree with Judge Evans that under the totality of the circumstances the police had more than enough probable cause to arrest Clark.[3]
 
 
 10
 Having found Clark's arrest did not violate the Fourth Amendment, we also find that the police search of his person after the arrest did not violate the constitution. The police may conduct a warrantless search of a suspect after making a valid custodial arrest. New York v. Belton, 453 U.S. 454, 461 (1981); United States v. Chapman, 954 F.2d 1352, 1357 (7th Cir. 1992). "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape." Chimel v. California, 395 U.S. 752, 763 (1969). Here, Clark was suspected of committing armed robbery and a search of his person was fully justified.
 
 
 11
 Clark also challenges the warrantless search of Ms. Clark's apartment. Clark, however, does not have standing to contest the search of Ms. Clark's apartment. "It has long been the rule that a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that his Fourth Amendment rights were violated by the challenged search or seizure." United States v. Padilla, 113 S. Ct. 1936, 1939 (1993). An individual has standing to contest a search when she has a legitimate expectation of privacy in the area that was searched. Rakas v. Illinois, 439 U.S. 128, 144-145 (1978). The following factors are considered in determining whether an individual has a legitimate expectation of privacy in a particular area:
 
 
 12
 (1) whether the defendant has a possessory interest in the place searched; (2) whether he has a right to exclude others therefrom; (3) whether he has exhibited a subjective expectation that the place remain free from governmental invasion; (4) whether normal precautions were taken to protect his privacy; and (5) whether he was legitimately on the premises.
 
 
 13
 United States v. Duprey, 895 F.2d 303, 309 (7th Cir. 1989), cert. denied, 495 U.S. 906 (1990) (citations omitted). Clark bears the burden of proving that he had a legitimate expectation of privacy in Ms. Clark's apartment. United States v. Torres, 32 F.3d 225, 230 (7th Cir. 1994); Duprey, 895 F.2d at 309. Clark has failed to satisfy his burden of proof. Clark had no possessory interest in the apartment and can be best characterized only as a guest; at trial, Ms. Clark testified that she lived in the apartment with her daughter and boyfriend, that Clark did not have keys to the apartment and would visit her apartment approximately twice a month and stay only 15 to 20 minutes, and that Clark did not stay overnight or use her apartment to wash up at or for other similar activities. Even if Clark could establish a legitimate expectation of privacy in his sister's apartment, Ms. Clark's consent[4] and exigent circumstances[5] justified the entry and search.[6]
 
 
 14
 Clark has shown no prejudice that would support relief. We therefore AFFIRM the district court's denial of Clark's Sec. 2255 petition.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed. R. App. P. 34(a); Cir. R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and record
 
 
 [1]
 Clark claims that ineffective assistance of counsel provides an independent ground for post conviction relief. This claim is appropriately raised for the first time in a Sec. 2255 petition because Clark's counsel on direct appeal was also his trial counsel. United States v. Taglia, 922 F.2d 413, 418 7th Cir. 1991), cert. denied sub nom. McDonnel v. United States, 500 U.S. 927 (1991). Since Clark must show ineffective assistance of counsel to establish cause for his failure to bring the suppression claims in his direct appeal and his claim for ineffective assistance is based upon counsel's failure to bring these suppression claims, the two claims will be analyzed together
 
 
 [2]
 We note that Chief Judge Evans, the presiding judge at Clark's trial, stated in his order denying Clark's Sec. 2255 petition:
 "[T]he result of the proceeding would not have been different if the additional suppression issues had been raised. I cannot imagine I would have granted any of the motions. The police had more than enough probable cause to arrest and then to search Mr. Clark. The proposed motions would not have changed the nature or the outcome of the proceedings.
 United States v. Clark, No. 91-Cr-290 (E.D. Wis. Sept. 30, 1993). While not dispositive, Judge Evans' estimation of the impact of Clark's suppression argument is informative. See Degaglia v. United States, 7 F.3d 609, 613 (7th Cir. 1993) (court noting district court comment that contested testimony at sentencing was irrelevant); Durrive v. United States, 4 F.3d 548, 552 (7th Cir. 1993) (court noting that district court, in denying the Sec. 2255 petition, stated petitioner would not have prevailed on uncontested sentencing issue).
 
 
 [3]
 Page 2 of this order summarizes the events which led to Clark's arrest and provided the police with probable cause to make the arrest
 
 
 [4]
 Clark also argues alternatively that Ms. Clark did not consent to the search of her apartment and that her consent was limited to looking for Eric Griffin. These arguments are without merit. In denying Clark's direct appeal, this court summarized Ms. Clark's consent by stating: "Gloria Clark answered the door and claimed that she was alone, but granted the police permission to search her apartment." United States v. Clark, 989 F.2d 1490, 1493 (7th Cir. 1993). At trial, Officer Wayne Kozich testified that Ms. Clark had given him permission to search the apartment. (Trial Transcript at 337). Ms. Clark testified that she had given the police permission to go through her apartment in order to search the apartment next door (Id. at 273) and that when the police asked Ms. Clark if they could search her apartment, in particular her closets, she responded by telling the officers the location of her closets (Id. at 275). Ms. Clark was authorized to consent to the search of her own apartment so that no warrant was required. See Florida v. Jimeno, 500 U.S. 248 (1991); United States v. Duran, 957 F.2d 499, 501 (7th Cir. 1992)
 
 
 [5]
 It is well established that a warrantless entry of a person's home is justified under exigent circumstances. United States v. Santana, 427 U.S. 38, 42-43 (1976); Warden v. Hayden, 387 U.S. 294, 298-99 (1967). This case involves the type of "hot pursuit" that has long been sufficient to justify a warrantless entry. See Santana, 427 U.S. at 43; United States v. Sewell, 942 F.2d 1209, 1213 (7th Cir. 1991), cert. denied, 112 S. Ct. 1567 (1992). The police arrived at Ms. Clark's apartment within thirty minutes of an armed robbery in search of the bank robbers. Under the circumstances, it was reasonable for the police to assume that the suspects were armed and a danger to both the police and public. See Warden v. Hayden, 387 U.S. at 298-300; United States v. Ware, 914 F.2d 997, 1000 (7th Cir. 1990)
 
 
 [6]
 In his reply brief, Clark argues that the government can not raise arguments on appeal in support of the district court's decision that had not been made in the lower court. Regardless of whether or not appellees can raise such arguments on appeal, we can affirm a judgment on a ground not reached by the lower court but supported by the record. See Patz v. St. Paul Fire and Marine Ins. Co., 15 F.3d 699, 703 (7th Cir. 1994)